# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DIONNE McKINNIE,

        Plaintiff,

    v.                                    Case No. 07-CV-774

JP MORGAN CHASE BANK, N.A.,

        Defendant.

_____

## ORDER FOR JUDGMENT AND JUDGMENT

Plaintiff Dionne McKinnie ("McKinnie") filed this class action lawsuit alleging that the automated teller machines (ATM's) owned by defendant JP Morgan Chase Bank, N.A. ("Chase") violated the Electronic Fund Transfers Act by failing to properly notify ATM users that a fee would be imposed. The parties negotiated a class action settlement of the claims and this court granted preliminary approval. The action is now before the court for final approval of the settlement and for an award of attorneys' fees to class counsel.

## BACKGROUND

McKinnie filed her class action suit on August 28, 2007, asserting that language appearing on the screens of Chase ATM's violated 15 U.S.C. § 1693b(d)(3)(c) of the Electronic Funds Transfer Act (EFTA) by failing to properly disclose ATM fees. The language stated that a fee "may" be assessed and did not explicitly state that a fee "will" be charged for the transaction. Before defendant

Chase filed an answer to the complaint, however, the parties requested an interim stay of the proceedings because a nearly identical class action lawsuit was on appeal before the Seventh Circuit Court of Appeals. That case, *Paradise v. JP Morgan Chase Bank*, *N.A.*, Appeal No. 07-3027, was originally filed in the Northern District of Illinois by the same counsel as the instant case and asserts similar claims arising from allegedly deficient Chase ATM fee notices.

The case filed in the Northern District of Illinois was initially named *Mowry v. JP Morgan Chase Bank*. The district court in *Mowry* dismissed the plaintiffs' claims for unjust enrichment and for actual damages under the EFTA. The court also denied class certification after concluding that the putative class did not meet the requirement for adequacy of the class representatives because of the close relationships between class counsel and two of the plaintiffs, nor did it meet the requirement that a class action lawsuit be the best method for adjudicating the members' claims. *See Mowry v. JP Morgan Chase Bank, N.A.*, No. 06 C 4312, 2007 U.S. Dist. LEXIS 44222, at *11, 13, 19 (N.D. Ill. June 19, 2007); No. 06 C 4312, 2007 WL 1772142, at *4-6 (N.D. Ill. June 19, 2007). Mowry and another plaintiff accepted Rule 68 offers of judgment following denial of the class certification. The two remaining plaintiffs filed a notice of appeal and the case was re-captioned as *Paradise v. JP Morgan Chase Bank*. The case was then assigned to the Seventh Circuit mediation section.

-2-

Meanwhile, McKinnie filed her action in the Eastern District of Wisconsin. The parties in the instant case requested a stay based on the pending appeal in the very similar *Paradise* case. This court granted the stay on February 21, 2008, and administratively closed the *McKinnie* case. The parties then participated in settlement negotiations with the assistance of a Seventh Circuit mediator and reached a class-wide settlement agreement covering the claims asserted in both *Paradise* and *McKinnie*. Because *Paradise* was before the Seventh Circuit while *McKinnie* remained at the district court level, the parties decided to present their proposed settlement for approval to this court.

The parties filed a motion in the *McKinnie* case requesting that the court lift its stay and reopen the case, which this court did on March 11, 2009. The parties also sought preliminary approval of their class action settlement and the court granted approval on April 8, 2009. The court's order provided conditional certification of a nationwide class consisting of:

> All persons in the United States who used an ATM card issued by a financial institution other than Chase to withdraw cash from an ATM operated by Chase and were charged a fee by Chase for use of the ATM between August 9, 2005, and September 10, 2006.

The settlement requires that Chase reimburse claiming class members for all ATM fees paid during the relevant period, up to a maximum total sum of $2.1 million. The costs of class notice, settlement administration and class counsel's fees and expenses are paid out of the settlement amount under the agreement. The

agreement terms provide that any undistributed funds remaining after the deduction of class claims, attorneys' fees, and expenses are to be divided as follows: a) 35% to be contributed to a *cy pres* charity; and b) 65% to be returned to Chase. The settlement also states that Chase will take no position on class counsel's fee petition, provided that they do not seek fees in excess of 33% of the total settlement fund.

The agreement specifies that a settlement administrator will provide both publication notice and internet notice to class members. The parties chose these forms of notice because the class members are non-Chase customers and Chase does not possess names or contact information for these individuals. The settlement administrator published notice of the settlement in two national publications, *Parade* and *USA Weekend*, and posted the notice on an internet website, at a cost of more than $350,000. The settlement notices resulted in the filing of 1,188 timely claims and 13 claims postmarked after the designated claims expiration date.

The court's order granting preliminary approval specified that class members had until August 10, 2009, to opt out of the class or file written objections. No class members opted out. However, two objections were filed on the deadline date. The objection filed by Chance and Rona White included a notice of intervention and indicated an intent to appear at the Final Settlement Approval Hearing. Chance White ("Objector White") appeared in person at the hearing on September 29, 2009. No other objectors appeared or intervened. Objector White raised objections to the

-4-

settlement agreement based on the proposed attorneys' fees, the reversion of unclaimed amounts to Chase, and the low response rate of putative class members. The court did not issue a decision on final approval of the settlement at the hearing. Instead, the court advised the parties to revisit the settlement figures, particularly the amounts for attorneys' fees and the *cy pres* contribution, and scheduled a further hearing.

The court held a second Final Settlement Approval Hearing on November 24, 2009. At the hearing, the parties reported that approximately $187,000 would be paid out to claiming class members. The parties also reported that Chase would pay approximately $395,000 for class notice and settlement administration, and approximately $312,000 as a *cy pres* contribution. Class counsel notified the court that it was filing an amended attorneys' fees petition requesting a reduced award of $625,000. Objector White also appeared at the hearing and expressed continued concerns about the amount of the attorneys' fees and advocated an increase in the amount of the *cy pres* award. The court instructed Objector White to submit his argument regarding the structure of the settlement in writing and instructed the parties to file responses. The court indicated that it would issue a written decision on both the structure of the settlement and the matter of attorneys' fees.

Objector White did not file any written argument. Instead, he filed a motion to withdraw his objection. Objector White noted in his brief that he had received clarification regarding the amount and distribution of the funds under the proposed

-5-

settlement and no longer wished to pursue his objection. The court granted Objector White's motion on December 8, 2009, and the objection was withdrawn with prejudice. Objector White then filed a motion for attorneys' fees in the amount of $25,000 for his involvement in the proceedings.

## ANALYSIS

The court will now consider the appropriateness of granting final approval of the settlement agreement and resolve the matter of attorneys' fees.

## I.     Final Approval of the Settlement Agreement

Federal courts look favorably upon the settlement of class action lawsuits. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). However, the district court must give "careful scrutiny" to proposed class action settlements and must consider whether a given settlement is "fair, adequate, and reasonable, and not the product of collusion." *Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748 (7th Cir. 2006) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)). In evaluating the fairness of a proposed settlement, a court considers the strength of the plaintiffs' case compared to the amount of the offer, the complexity and likely length of the litigation, the amount of opposition to the settlement, the opinion of counsel and the stage of the proceedings. *Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

The court finds that the proposed settlement agreement is fair, adequate, and reasonable. First, the settlement is fair and adequate because claiming class

-6-

members will be made whole for all ATM fees they paid to Chase during the period in question. Full reimbursement for ATM fees actually paid by the claimants appears eminently reasonable. In contrast, a pro rata distribution of the $2.1 million settlement amount would result in a windfall to the approximately 1,200 individual claimants of far more than any damages suffered from paying $2.00 transaction fees after receiving an allegedly inadequate warning.

Second, the fairness of the settlement is apparent when the court considers the strength of the plaintiffs' case. The plaintiffs were unsuccessful at the district court level in the *Paradise* case, and they risk an unfavorable outcome in the Seventh Circuit Court of Appeals or in this court if they choose to pursue further litigation of their claims. Moreover, the Sixth Circuit subsequently issued a decision which calls the validity of the plaintiffs' claims into question. The Sixth Circuit held in *Clemmer v. Key Bank National Association* that an ATM on-screen notice stating that a fee "may" be charged for a transaction provided adequate notice and did not constitute a violation of the EFTA. 539 F.3d 349, 355 (6th Cir. 2008). This court may very well reach the same conclusion if asked to rule on the issue. Thus, the settlement is fair, adequate, and reasonable given the *Clemmer* decision and the relative weakening of the plaintiffs' case that followed.

The lack of significant opposition to the settlement also supports approval of the agreement. Approximately 1,200 class members filed claims in response to the settlement notice. However, not a single person opted out of the class and only two

objections were filed. Objector White was the only class member to appear at the hearing, and he has since withdrawn his objection. Additionally, counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator for the Seventh Circuit Court of Appeals. These factors suggest that the settlement is fair and merits final approval.

Lastly, the two objections filed with the court do not raise convincing arguments against the fairness of the proposed settlement. The objections primarily oppose the amount of the requested attorneys' fees, the existence of a "reverter clause" returning 65% of the undistributed award amount to Chase, and the inclusion of a so-called "clear sailing provision" whereby Chase agrees not to oppose counsel's petition for attorneys' fees. None of these challenged terms render the settlement *per se* unreasonable. The amount of fees sought by class counsel equals approximately 30% of the settlement amount, which is common among contingency fee arrangements and is not facially unreasonable. Parties in a class action settlement may negotiate attorneys' fees based on a percentage of the entire common fund, and are not required to base the fees on class members' claims against the fund. *See Williams v. MGM-Panthe Communications, Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). In addition, the reversion of unclaimed funds to the defendant is not objectionable when class members receive full recovery for their damages and the parties agree to the reversion. *Mangone v. First USA Bank*, 206 F.R.D. 222, 230 (S.D. Ill. 2001). Finally, a defendant in a class action settlement has

-8-

no obligation to oppose the fee petition submitted by class counsel. Thus, the fact that the proposed settlement includes these terms does not render it inherently unfair or unreasonable.

Nevertheless, the combination of a reverter clause and a clear sailing provision may warrant close scrutiny by the court and may, in a given case, lead the court to deny approval of the settlement. *See Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 45-46 (D. Me. 2005) (denying approval of proposed class action settlement because the parties failed to overcome the presumption of unfairness presented by the inclusion of both a reverter clause and a clear sailing provision within the settlement agreement). However, the inclusion of both a reverter clause and a clear sailing provision does not compel rejection of the settlement agreement here. The court concludes that there has been no collusion between the parties in the instant case. The claimants will receive full damages and Chase will pay more than $310,000 to a *cy pres* charity. The sum of these two amounts approximates the $500,000 statutory penalty under the EFTA for violation of the statute. There remain no objections to approval of the settlement from class members who intervened or appeared at the approval hearings. Further, the settlement was achieved after arms-length negotiation with the assistance of a Seventh Circuit mediator. The reverter clause and clear sailing provision do not render the settlement agreement unfair or unreasonable when viewed against all other relevant considerations.

-9-

The two objections (one of which has been withdrawn) also contest the settlement's method of noticing class members, the method of distributing the settlement award, and the allegedly burdensome nature of the claim filing process. However, providing individual notice to each potential claimant was infeasible and publication constituted the "best notice that is practicable under the circumstances," as required under Federal Rule of Civil Procedure 23(c)(2). The class members in this case are non-customers of Chase who used Chase ATM's. Therefore, Chase did not possess identifying information for these individuals. In such circumstances where individual notice is not feasible, publication of notice in a nationally-circulated newspaper and in an online posting constitutes an acceptable substitute. *Mirfasihi*, 356 F.3d at 786.

Further, the method of distributing the settlement fund does not render the agreement unfair or unreasonable. The use of a *cy pres* contribution is proper and acceptable in class action settlements, particularly when locating and ascertaining the status of all individual class members is prohibitively difficult or expensive. *See In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1031 (N.D. Ill. 2000). One of the objections opposes the reversion of any unclaimed funds to Chase and suggests that all unclaimed funds should instead be awarded to the *cy pres* charity. However, as previously noted, the inclusion of a reverter clause within a class action settlement agreement is not itself problematic. Indeed, a reverter clause can be a useful tool in negotiating a settlement when the total number of eventual claimants

-10-

is unknown. A defendant may agree to a higher maximum settlement amount –
which allows more claimants to be fully compensated for their damages if a large
number of claims are filed – in return for possible reversion of a portion of the
unclaimed funds. Under the proposed agreement, Chase will contribute more than
$310,000 to the named *cy pres* charity. This amount is significant and, in
combination with the damages for the claimants, the costs for publishing the notices
and administering the settlement, and the cost of attorneys' fees, provides adequate
deterrence and punishment for the alleged wrong-doing. In addition, as the court
noted, distributing any unclaimed amounts to claimants on a pro rata basis will result
in an unwarranted windfall for those claimants. The court finds no unfairness arising
from the settlement's proposed methods of distributing the settlement fund.

Further, the court does not find the objections to the claim filing process to be
meritorious. One objector argued that requiring claimants to attest that they
withdrew cash from a Chase ATM using a non-Chase card "under penalty of perjury"
made the process too onerous and deterred potential class members from filing
claims. However, the court does not believe that requiring claimants to verify on the
claim forms that they meet class requirements is improper. The settlement is not
unfair based on this condition.

The "most important factor" in evaluating the fairness of a class action
settlement is "the strength of the plaintiff's case on the merits balanced against the
amount offered in the settlement." *Synfuel Technologies, Inc. v. DHL Express (USA),*

*Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). The amount that Chase will ultimately pay out to class members and the *cy pres* charity is significant when balanced against the strength of the plaintiff's case. The claimants will receive full reimbursement of their ATM fees and Chase is adequately deterred from notifying ATM users that a fee "may" be charged rather than "will" be charged. The court is convinced that the proposed settlement is fair, adequate and reasonable. Therefore, the court will grant final approval of the settlement.

## II.    Attorneys' Fees

The proposed settlement provides that class counsel will receive an award of attorneys' fees from the common fund. This method of recovering attorneys' fees is known as the "common-fund" doctrine, and holds that class counsel who wins a settlement or judgment creating a commonly-held fund for the benefit of the class is entitled to a reasonable fee drawn from that fund. *See e.g. Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Florin v. Nationsbank, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994). A district court may award attorneys' fees by either allowing class counsel to recover a percentage of the fund as their fee, the "percentage-of-the-fee method," or by multiplying the number of hours worked by a reasonable hourly rate, the "lodestar method." *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974-75 (7th Cir. 1991). The district court has considerable discretion to determine the reasonableness of attorneys' fees because it has the greatest familiarity with the

case and is in the best position to scrutinize the attorneys' work. *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988); *Hyland v. Indicator Lites, Inc.*, 160 F. Supp. 2d 981, 984 (N.D. Ill. 2001). However, courts must attempt to award the market price for legal services when determining appropriate fees in common-fund cases, "in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 598 (7th Cir. 2005) (quoting *In re Synthroid Marketing Litig.*, 264 F.3d 712 (7th Cir. 2001)).

### A. Fees Sought by Class Counsel

Class counsel seeks an award of fees in the amount of $625,000, equaling approximately 30% of the $2.1 million settlement fund. Counsel argues that this amount is appropriate because it simulates the market for small class action claims, which generally involve a contingency fee of one-third of the class fund. Counsel also argues that the total settlement amount offered, $2.1 million, constitutes the common fund for purposes of calculating attorneys' fees.

An appropriate attorneys' fee award is one that "re-creates" the market for the provided legal services. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000) (stating that "the measure of what is reasonable is what an attorney would receive from a paying client in a similar case."). The court accepts counsel's suggestion that the case would be handled on a class action contingency fee basis in the private market. The class members have little motivation to retain counsel on an hourly basis because they are not guaranteed to prevail on their claims and the

-13-

individual damages suffered were nominal. A contingency fee arrangement is appropriate in such a case because it insulates the plaintiffs from any economic risk if their litigation is ultimately unsuccessful. Therefore, the market rate for the legal services provided by class counsel is a contingency fee. *See Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate'".). The court will award attorneys' fees as a percentage of the common fund because it most closely replicates the market for the legal services provided.

The next determination for the court is whether the percentage should be calculated based on the total settlement fund, or whether it should be calculated based on the actual amount claimed by the class. The answer is important to a determination of class counsel's fees because a relatively small number of class members filed claims and the value of those claims totals approximately $187,000. Even including the more than $310,000 to be paid to the *cy pres*, the total amount of the settlement directly benefitting the class is approximately $500,000. Class counsel's fee award is far lower if based upon the amount claimed against the fund rather than the entire $2.1 million common fund.

The court finds that an award of attorneys' fees is appropriately based upon the total common fund and not on the amount claimed against it. The $2.1 million settlement amount was available to the entire class, regardless of the fact that a small number of class members actually filed claims. Therefore, an award of

-14-

attorneys' fees should be calculated based upon the full benefit. *Boeing Co v. Van Gemert*, 444 U.S. 472, 480 (1980) (stating that the right of absentee class members " to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *See* 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6, p. 570 (4th ed. 2002) (stating that *Boeing* settled the issue of whether the benchmark common fund amount for fee award purposes is made up of the amount claimed by class members or the amount potentially available to class members by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.). Other courts have upheld attorneys' fee awards based on the entire common fund, even when a portion of that fund was not claimed by class members and reverted to the defendant. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on this basis of the total funds made available, whether claimed or not."); *Waters Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-98 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund though a portion reverted to the defendant); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (holding that the district court abused its discretion by awarding attorneys' fees as one-third of the

$10,000 claimed against the common fund rather than awarding one-third of the entire $4.5 million settlement fund in a case where unclaimed funds reverted to the defendant).  The court will similarly base its award of attorneys' fees on the entire common fund amount in the instant case.

The remaining determination for the court is whether class counsel's request for attorneys' fees is reasonable and appropriate.  Counsel seeks an award of fees and expenses in the amount of $625,000 equaling approximately 30% of the $2.1 million common fund amount.  An award of 30% falls within the normal percentage range of common fund attorney fee awards approved by courts. *See* 4 *Newberg on Class Actions* § 14:6, p. 558 (4th ed. 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement.).  This figure may seem high when compared with the approximately $500,000 to be paid to the class through claim payments and the *cy pres* fund distribution.  However, the court concluded above that the appropriate figure for comparison is the total common fund amount of $2.1 million and not the amount claimed against the fund.  The $625,000 figure also appears high compared with the approximately $476,000 in attorney hours represented within the billing records submitted by class counsel. (*See* O'Reilly Decl, Dk #44 , Exs. A-B).  However, the total hours that counsel expended on the case is not the determining factor because the court does not apply a "lodestar" method for calculating fees in a class action common fund settlement such as this one.  The

-16-

"percentage of the fee" method is preferable because it more closely replicates the contingency fee market rate for counsel's legal services. Indeed, "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Finally, a straight hourly calculation does not properly account for the result achieved by counsel. The settlement agreement guarantees full reimbursement of ATM fees for all claiming class members and guarantees a more than $300,000 *cy pres* contribution. Counsel negotiated this settlement for claims whose legal merit has been seriously called into question. For these reasons, the court finds that class counsel's fee request is reasonable and will grant an award of $625,000.[1]

## B.    Fees Sought by Objector White

Objector White is an attorney and requests an award of attorneys' fees in the amount of $25,000 for his involvement in the settlement proceedings. Objector White argues that he is entitled to an award of fees, despite the fact that he withdrew his objection, because his argument for a "pro rata" distribution of the common fund

---

[1]Prior to the withdrawal of his objection, Objector White asserted that res judicata barred class counsel from receiving attorneys' fees for the class action settlement. Counsel received fees in connection with the accepted offers of judgment for the individual plaintiffs in the *Paradise* action. Therefore, Objector White argued, counsel was subsequently barred from receiving any additional award of fees for settlement of this case. However, res judicata does not bar an award of attorneys' fees here. First, the previous attorneys' fee award involved the claims of different parties. The award of fees in *Paradise* was made pursuant to the acceptance of Rule 68 offers of judgment by two individual plaintiffs. In contrast, the instant settlement involves claims on behalf of an entire class. The stipulation for attorneys' fees filed in the *Paradise* case also anticipates a future award of attorneys' fees as a result of appeal of the case. (*See* O'Reilly Decl., Dk #35, Ex. M). Therefore, the court cannot find that a stipulated fee award in *Paradise* for offers of judgment precludes an award of attorneys' fees here.

Case 2:07-cv-00774-JPS   Filed 12/31/09   Page 17 of 25   Document 52

resulted in an increased distribution to claimants. He asserts that class members "would have received" payments totaling $22,416 under the plan of allocation provided in the original settlement, but as a result of his objection, claimants "will receive" $187,080. This court disagrees.

The settlement agreement provides that all claimants will receive a full refund of all ATM fees paid during the relevant period. Claimants submitted redacted ATM card numbers including the first four digits and last four digits of their 16-digit personal identification number to verify their ATM transactions. (Ness Decl., Dk #35, Ex. A, at ¶ 3). The settlement administrator then compared these redacted numbers to Chase's database and calculated the highest possible number of transactions for any individual claimant. Using this methodology, the average number of transactions per claimant is twelve and all but two claimants engaged in less than 100 transactions during the period. However, to ensure that no claimant is paid less than their full ATM fees, Chase and class counsel agreed that all claimants will receive a payout based on at least 100 transactions.

Objector White takes credit for the agreement between Chase and class counsel to base all payouts on a minimum of 100 transactions. He asserts that this is the result of his argument in favor of a pro rata distribution. However, a pro rata distribution would give each claimant a proportionate distribution of the total $2.1 million common fund based on their number of transactions. It would not simply provide a payout of $200 to each claimant with less than 100 identifiable

-18-

transactions.  The court does not find that Objector White's involvement resulted in an increased economic benefit to the class based on his pro rata argument.  The parties did not heed his suggestion that the common fund be distributed on a pro rata basis.  Instead, the parties opposed such a distribution as constituting an unjustified windfall for claimants.

Further, Objector White is not entitled to attorneys' fees because he is a *pro se* litigant.  There is considerable authority stating that a court should not award attorneys' fees to a *pro se* litigant who is also an attorney. *In re Texaco Inc. Shareholder Derivative Litig.*, 123 F. Supp. 2d 169, 172 (S.D.N.Y. 2000) (citations omitted).  This is because "a rule that authorizes awards of counsel fees to *pro se* litigants – even if limited to those who are members of the bar – would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf." *Kay v. Ehrler*, 499 U.S. 432, 438 (7th Cir. 1991).  This reasoning also applies to a *pro se* attorney objector in a class action settlement.  A *pro se* attorney in *In re Texaco Shareholder Derivative Litigation* was denied attorneys' fees after successfully objecting to the attorneys' fees awarded pursuant to a settlement of a shareholders derivative action. 123 F. Supp. 2d at 174.  The court noted that the *pro se* attorney was not merely representing himself because his objection implicated the interests of other shareholders and that he was not entitled to receive fees for that representation. 123 F. Supp. 2d at 172.  The court also cited policy concerns supporting its decision, including the policy of encouraging

-19-

a party to retain counsel in every case, even when the party is himself an attorney. Id. at 173. ("If [the pro se attorney objector] were permitted to recover fees in this case, a plaintiff who happened also to be a lawyer would be deterred from retaining competent, objective counsel, by the knowledge that he could enrich himself by recovering attorneys' fees if he prevails."). Objector White is a *pro se* litigant and the court would undermine the policy of encouraging the retention of counsel in all cases if it granted his motion. Thus, an award of attorneys' fees to Objector White is neither appropriate nor warranted.

Accordingly,

**IT IS HEREBY ORDERED THAT:**

This court finds that the Settlement Agreement has been entered into in good faith following arms-length negotiations and is non-collusive.

This court grants final approval of the Settlement Agreement, including but not limited to the releases therein, and finds that it is in all respects fair, reasonable, and in the best interest of the Settlement Class. Any objections which were filed have been considered and overruled. Therefore, all members of the Settlement Class who have not opted out are bound by this Order for Judgment and Judgment.

### Class Certification

The provisionally certified class (the "Settlement Class") is now finally certified pursuant to Rule 23(b)(3):

-20-

All persons in the United States who used an automated teller machine (ATM) card issued by a financial institution other than Chase to withdraw cash from an ATM operated by Chase and were charged a fee by Chase for use of the ATM between August 9, 2005, and September 10, 2006.

Plaintiff Dionne McKinnie and Jason Paradise are designated as class representatives of the Settlement Class.

The law firms of Ademi & O'Reilly LLP and Miller Law LLC are appointed as Settlement Class Counsel.

The certification of the Settlement Class is non-precedential and without prejudice to defendant's rights under the Settlement Agreement if the Settlement Agreement and this Order for Judgment and Judgment do not become effective as provided in the Settlement Agreement.

## Class Notice

The Class Notice (as described in the Settlement Agreement) fully complies with the requirements of Rule 23 and due process, constitutes the best notice practicable under the circumstances, and is due and sufficient notice to all persons entitled to notice of the settlement of this lawsuit.

## Objections and Opt-Outs

Two objections were filed by Class Members. The Court has considered the objections carefully and has overruled them. None of these objections raise valid concerns about the Settlement Agreement. No person or entity has requested exclusion from the Settlement Class.

-21-

## CAFA Notice

In compliance with the notice provision of the Class Action Fairness Act, 28 U.S.C. § 1715, defendant served timely notice of the settlement to the appropriate officials, and, therefore, the settlement is fully enforceable against all Settlement Class Members (except those who have opted out).

## Class Compensation

Defendant shall provide the Class Compensation set forth in paragraph 4 of the Settlement Agreement on the timetable provided in the Settlement Agreement.

## Releases

Plaintiff and each Settlement Class Member are determined to have given the releases described in paragraphs 11 and 12 of the Settlement Agreement.

## Award of Attorneys' Fees and Costs

The court grants Settlement Class Counsel's application for attorneys' fees and costs in the amount of $625,000 and awards plaintiff an incentive fee in the amount of $1,000, finding such fees and costs to be fair and reasonable, and finding that the costs are sufficiently supported.

## Other Provisions

The McKinnie lawsuit is dismissed with prejudice as to plaintiff and all members of the Settlement Class without fees or costs except as provided above.

-22-

Within seven days of the Effective Date of the settlement agreement (as that term is defined in the settlement agreement), Jason Paradise is directed to file a notice that voluntarily dismisses his appeal, currently pending in the Seventh Circuit, in the case styled as *Paradise v. JPMorgan Chase Bank, N.A.*, No. 07 C 4312.

This court retains jurisdiction over this action, plaintiff, defendant, and all members of the Settlement Class to determine all matters relating in any way to this Order for Judgment and Judgment, the Preliminary Approval Order, or the Settlement Agreement, including but not limited to their administration, implementation, interpretation, or enforcement.

The parties to the Settlement Agreement shall carry out their respective obligations thereunder.

In the event that: 1) the Settlement Agreement is terminated pursuant to its terms; 2) defendant withdraws from the Settlement Agreement; 3) the Settlement Agreement, Preliminary Approval Order, and Order for Judgment and Judgment do not for any reason become effective; or 4) the Settlement Agreement, Preliminary Approval Order, and Order for Judgment and Judgment are reversed, vacated, or modified in any material respect, then: a) any and all orders entered pursuant to the Settlement Agreement shall be deemed vacated, including without limitation the certification of the Settlement Class and all other relevant portions of this Order; (b) the instant action shall proceed as though the Settlement Class had never been certified; and (c) no reference to the prior Settlement Class, or any documents

-23-

related thereto, shall be made for any purpose; provided, however, that if the parties to the Settlement Agreement agree to jointly appeal a ruling disapproving the Settlement Agreement and the Settlement Agreement is upheld on appeal, then the Settlement Agreement and Final Order and Judgment shall be given full force and effect according to their terms. In the event the settlement does not become final in accordance with the terms of the Settlement Agreement, this Order for Judgment and Judgment shall be void and shall be deemed vacated. Defendant retains the right to oppose class certification if the settlement is vacated, and the doctrine of res judicata and/or collateral estoppel shall not be applied.

Neither the Settlement Agreement, this Order for Judgment and Judgment, nor any of their provisions, nor any of the documents (including but not limited to drafts fo the Settlement Agreement, the Preliminary Approval Order or the Order for Judgment and Judgment), negotiations, or proceedings relating in any way to the settlement, shall be construed as or deemed to be evidence of an admission or concession of any kind by any person, including defendant, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except in an action brought to enforce its terms or except as may be required by law or court order.

-24-

**IT IS FURTHER ORDERED** that the objectors' motion for attorneys' fees

(Docket #46) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 31st day of December, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

Judgment entered this 31st day of December, 2009.

JON W. SANFILIPPO
Clerk of Court

By:  s/ Nancy A. Monzingo
Deputy Clerk